1
2
3
4
5
6
7
8
9            **IN THE UNITED STATES DISTRICT COURT**
10          **FOR THE EASTERN DISTRICT OF CALIFORNIA**
11

12   JAMES STANLEY KOENIG,              No.  2:21-CV-1145-DAD-DMC-P
13                  Petitioner,
                                        <u>FINDINGS AND RECOMMENDATIONS</u>
14          v.
15   C. KOENIG,
16                  Respondent.
17

18          Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of

19   habeas corpus under 28 U.S.C. § 2254.  Pending before the Court are Petitioner's amended

20   petition for a writ of habeas corpus, ECF No. 27, Respondent's answer, ECF No. 31, and

21   Petitioner's traverse, ECF Nos. 43 and 44.  Respondent has lodged the state court record.  <u>See</u>

22   ECF No. 30.

23          Because this action was filed after April 26, 1996, the provisions of the

24   Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable.

25   <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Calderon v. United States Dist. Ct. (Beeler)</u>, 128

26   F.3d 1283, 1287 (9th Cir. 1997), <u>cert.</u> <u>denied,</u> 522 U.S. 1099 (1998).  Under AEDPA, federal

27   habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in

28   / / /

                                              1

1    state court proceedings unless the state court's adjudication of the claim:

2        (1) resulted in a decision that was contrary to, or involved an unreasonable
3        application of, clearly established Federal law, as determined by the
    Supreme Court of the United States; or

4        (2) resulted in a decision that was based on an unreasonable determination
    of the facts in light of the evidence presented in the State court proceeding.
5

6        Under § 2254(d)(1), federal habeas relief is available only where the state court's

7    decision is "contrary to" or represents an "unreasonable application of" clearly established law.

8    Under both standards, "clearly established law" means those holdings of the United States

9    Supreme Court as of the time of the relevant state court decision.  See Carey v. Musladin, 549

10   U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412).  "What matters are the holdings of the

11   Supreme Court, not the holdings of lower federal courts."  Plumlee v. Masto, 512 F.3d 1204 (9th

12   Cir. 2008) (en banc).  For federal law to be clearly established, the Supreme Court must provide a

13   "categorical answer" to the question before the state court.  See id.; see also Carey, 549 U.S. at

14   76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators'

15   conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test

16   for determining prejudice created by state conduct at trial because the Court had never applied the

17   test to spectators' conduct).  Circuit court precedent may not be used to fill open questions in the

18   Supreme Court's holdings.  See Carey, 549 U.S. at 74.

19       In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a

20   majority of the Court), the United States Supreme Court explained these different standards.  A

21   state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by

22   the Supreme Court on the same question of law, or if the state court decides the case differently

23   than the Supreme Court has on a set of materially indistinguishable facts.  See id. at 405.  A state

24   court decision is also "contrary to" established law if it applies a rule which contradicts the

25   governing law set forth in Supreme Court cases.  See id.  In sum, the petitioner must demonstrate

26   that Supreme Court precedent requires a contrary outcome because the state court applied the

27   wrong legal rules.  Thus, a state court decision applying the correct legal rule from Supreme Court

28   cases to the facts of a particular case is not reviewed under the "contrary to" standard.  See id. at

1    406.  If a state court decision is "contrary to" clearly established law, it is reviewed to determine

2    first whether it resulted in constitutional error.  See Benn v. Lambert, 283 F.3d 1040, 1052 n.6

3    (9th Cir. 2002).  If so, the next question is whether such error was structural, in which case federal

4    habeas relief is warranted.  See id.  If the error was not structural, the final question is whether the

5    error had a substantial and injurious effect on the verdict or was harmless.  See id.

6            State court decisions are reviewed under the far more deferential "unreasonable

7    application of" standard where it identifies the correct legal rule from Supreme Court cases, but

8    unreasonably applies the rule to the facts of a particular case.  See Wiggins v. Smith, 539 U.S.

9    510, 520 (2003).  While declining to rule on the issue, the Supreme Court in Williams, suggested

10   that federal habeas relief may be available under this standard where the state court either

11   unreasonably extends a legal principle to a new context where it should not apply, or

12   unreasonably refuses to extend that principle to a new context where it should apply.  See

13   Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court

14   decision is not an "unreasonable application of" controlling law simply because it is an erroneous

15   or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63,

16   75-76 (2003).  An "unreasonable application of" controlling law cannot necessarily be found even

17   where the federal habeas court concludes that the state court decision is clearly erroneous.  See

18   Lockyer, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper

19   deference to state courts by conflating error (even clear error) with unreasonableness."  Id. at 75.

20   As with state court decisions which are "contrary to" established federal law, where a state court

21   decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless

22   unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

23           The "unreasonable application of" standard also applies where the state court

24   denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d

25   848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  Such decisions

26   are considered adjudications on the merits and are, therefore, entitled to deference under the

27   AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 223 F.3d at 982.

28   The federal habeas court assumes that state court applied the correct law and analyzes whether the

3

1  state court's summary denial was based on an objectively unreasonable application of that law.

2  See Himes, 336 F.3d at 853; Delgado, 223 F.3d at 982.

3

4  ### I. BACKGROUND

5  The California Court of Appeal, in ruling on Petitioner's direct appeal, recited the

6  facts of the case, and Petitioner has not offered any clear and convincing evidence to rebut the

7  presumption that these facts are correct.[1]  See ECF No. 30-52, pgs. 2-22.  As the parties are

8  familiar with the facts, they are not repeated here.  The relevant facts are discussed below in the

9  context of each of Petitioner's specific claims.

10  The California Court of Appeal outlined the following procedural history through

11  direct appeal:

12  A jury found defendant James Stanley Koenig guilty of 33 counts

13  of securities fraud and enhancements – mostly involving Corporations
Code section 25401 [footnote omitted] – and two counts of residential

14  burglary. . . .

* * *

15

16  Prior to jury deliberation, the trial court dismissed counts 5, 19, 24,
30, and 39. The jury ultimately found defendant not guilty on Count 8 but

17  guilty on every remaining count: Counts 1-4, 6, 7, 9-18, 20-23, 25-29, 31-
38 and 41-42. The jury also found the enhancement allegations true.

18  [footnote omitted].
The trial court sentenced defendant to an aggregate term of 42

19  years eight months. [footnote omitted].

20  ECF No. 30-52, pg. 2, 22.

21  The Court of Appeal affirmed Petitioner's conviction and sentence on December

22  15, 2020.  See ECF No. 30-52.  The California Supreme Court denied direct review on March 10,

23  2021.  See ECF No. 30-53.  Petitioner then filed a series of post-conviction actions in state court,

24  all of which were denied or withdrawn.  See ECF Nos. 30-54 through 30-62.

25  [1]     Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made

26  by a State court shall be presumed to be correct."  Findings of fact in the last reasoned state court
decision are entitled to a presumption of correctness, rebuttable only by clear and convincing

27  evidence.  See Runningeagle v. Ryan, 686 F.3d 759 n.1 (9th Cir. 2012).  Petitioner bears the
burden of rebutting this presumption by clear and convincing evidence.  See id.  The facts are,

28  therefore, drawn from the state court's opinion(s), lodged in this court.  Petitioner may also be
referred to as "defendant."

## II. DISCUSSION

In the first amended petition, Petitioner asserts seven grounds for relief. <u>See</u> ECF No. 27, pgs. 27-28. The ground asserted are as follows:

Ground I      The trial court erred in allowing the jury to convict Petitioner of violations of § 25401 as a conspirator on a finding of criminal negligence, a theory that does not exist under state law. <u>See</u> ECF No. 27, pgs. 29-31.

Ground II     The trial court erred in allowing the jury to convict Petitioner of violations of § 25401 as an aider and abettor on a finding of criminal negligence, a theory that does not exist under state law. <u>See</u> <u>id.</u> at 32-34.

Ground III    Because the trial court permitted the jury to find liability under § 25401 on theories of criminal negligence, the trial court erred in allowing the jury to convict Petitioner of burglary with intent to commit violations of § 25401 without a finding of specific intent to commit a felony. <u>See</u> <u>id.</u> at 35-37.

Ground IV    The appellate court erred in concluding that any error with respect to the trial court's refusal to instruct the jury as to the definition of "indirect" was harmless because the state did not raise that defense. <u>See</u> <u>id.</u> at 38-4.

Ground V     The trial court erred in refusing to instruct the jury on a mistake-of-law defense. <u>See</u> <u>id.</u> at 41-44.

Ground VI    The trial court erred in failing to instruct the jury that it must unanimously agree on the overt act committed in furtherance of the conspiracy. <u>See</u> <u>id.</u> at 45-47.

Ground VII   Cumulative error. <u>See</u> <u>id.</u> at 48-49.

Respondent argues in the answer that Petitioner's disagreement with the state court's holding on matters of state law and application of the harmless error doctrine is "not helpful." ECF No. 31, pgs. 20-23. Respondent also asserts that the state court acted reasonably in the determination that Petitioner was not prejudiced by the lack of a defense instruction. <u>See</u> <u>id.</u> at 23-32. Next, Respondent argues that the state court's rejection of an instruction on unanimity was also reasonable. <u>See</u> <u>id.</u> at 32-33. Finally, Respondent argues that the state court was reasonable in it's rejection of Petitioner's cumulative error claim. <u>See</u> <u>id.</u> at 33.

/ / /

/ / /

5

1    **A.    Jury Instruction Claims**

2    In the amended petition, Petitioner raises the six claims related to jury instructions

3    in his criminal trial.  Ground I challenges the trial court's instructions relating to conspiracy

4    liability.  Ground II challenges the trial court's instructions relating to aiding-and-abetting

5    liability.  Ground III challenges the trial court's instructions relating to burglary.  Ground IV

6    challenges the appellate court's application of the harmless error standard to the trial court's

7    refusal to instruct the jury on the definition of "indirect."  Ground V challenges the failure of the

8    trial court to instruct on a mistake-of-law defense.  Ground VI challenges the trial court's failure

9    to provide a unanimity instruction as to the overt act committed in furtherance of a conspiracy.

10    A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a

11    transgression of federal law binding on the state courts.  See Middleton v. Cupp, 768 F.2d 1083,

12    1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is not available

13    for alleged error in the interpretation or application of state law.  See Middleton, 768 F.2d at

14    1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786

15    F.2d 1378, 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state issues de novo.

16    See Milton v. Wainwright, 407 U.S. 371, 377 (1972).  Thus, a challenge to jury instructions does

17    not generally give rise to a federal constitutional claim.  See Middleton, 768 F.2d at 1085) (citing

18    Engle v. Isaac, 456 U.S. 107, 119 (1982)).

19    However, a "claim of error based upon a right not specifically guaranteed by the

20    Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so

21    infects the entire trial that the resulting conviction violates the defendant's right to due process."

22    Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th

23    Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941).  In order to raise such a

24    claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete

25    miscarriage of justice."  Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396

26    F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).

27    / / /

28    / / /

6

In general, to warrant federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process right guaranteed by the fourteenth amendment." Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)). To prevail, petitioner must demonstrate that an erroneous instruction "'so infected the entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp, 414 U.S. at 147. In making its determination, this court must evaluate an allegedly ambiguous jury instruction "'in the context of the overall charge to the jury as a component of the entire trial process.'" Prantil, 843 F.2d at 817 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)). Further, in reviewing an allegedly ambiguous instruction, the court "must inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Estelle, 502 U.S. at 72 (quoting Boyde v. California, 494 U.S. 370, 380 (1990)). Petitioner's burden is "especially heavy" when the court fails to give an instruction. Henderson v. Kibbe, 431 U.S. 145, 155 (1977). Where an instruction is missing a necessary element completely, the "reasonable likelihood" standard does not apply and the court may not ". . . assume that the jurors inferred the missing element from their general experience or from other instructions. . . ." See Wade v. Calderon, 29 F.3d 1312, 1321 (9th Cir. 1994). In the case of an instruction which omits a necessary element, constitutional error has occurred. See id.

Even if there is constitutional error, non-structural errors may be harmless. See Hedgpeth v. Pulido, 129 S.Ct. 530, 532 (2008) (per curiam) (citing Chapman v. California, 386 U.S. 18 (1967)). In the context of jury instructions, an error is non-structural so long as the error does not "vitiat[e] all the jury's findings." Sullivan v. Louisiana, 508 U.S. 275, 2781 (1993) (holding that an erroneous reasonable doubt instruction resulted in structural error not subject to harmless error analysis). An instructional error which resulted in omission of an element of the offense was a non-structural trial error subject to harmless error review. See Hedgpeth, 129 S.Ct. at 532 (citing Neder v. United States, 527 U.S. 1 (1999)). An erroneous aider and abettor instruction is also non-structural. See id. (citing California v. Roy, 519 U.S. 2 (1996) (per curiam)). A jury instruction which misstates an element of an offense is also non-structural.

7

1    See id. (citing Pope v. Illinois, 481 U.S. 497 (1987)).  An erroneous burden-shifting instruction is

2    also not structural.  See id. (citing Rose v. Clark, 478 U.S. 570 (1986)).  Finally, an instruction on

3    multiple theories of guilt where one of the theories is improper does not result in a structural error

4    requiring automatic reversal but is a non-structural error subject to harmless error analysis.

5    See id.

6            In Chapman, a case before the Supreme Court on direct review, the Court held that

7    "before a [non-structural] constitutional error can be held harmless, the court must be able to

8    declare a belief that it was harmless beyond a reasonable doubt."  386 U.S. at 24.  A different

9    harmless error standard applies to cases on collateral review.  In Brecht v. Abrahamson, the Court

10   stated that applying the Chapman standard on collateral review "undermines the States' interest in

11   finality and infringes upon their sovereignty over criminal matters."  507 U.S. 619, 637.  The

12   Court also noted that the Chapman standard is at odds with the historic meaning of habeas corpus

13   – which is meant to afford relief only to those who have been grievously wronged – because it

14   would require relief where there is only a reasonable possibility that a constitutional error

15   contributed to the verdict.  See id.  Therefore, in habeas cases, the standard applied in Kotteakos

16   v. United States, 328 U.S. 750 (1946), governs harmless error analysis for non-structural

17   constitutional errors.  See Brecht, 507 U.S. at 637.  Under this standard, relief is available where

18   non-structural error occurs only where such error "had a substantial and injurious effect or

19   influence in determining the jury's verdict."  Kotteakos, 328 U.S. at 776.

20           Below, the Court evaluates the state court's determination of each of Petitioner's

21   jury instruction claims consistent with the foregoing principles and the standard of review under

22   AEDPA.

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

8

1.    <u>Conspiracy</u>

Petitioner argues that the trial court allowed the jury to convict on a theory of culpability that did not exist under state law. [2]   <u>See</u> ECF No. 27, pg. 5.  In Attachment C to the amended petition, Petitioner adds:

> The trial court committed prejudicial error in allowing the jury to convict petitioner of the § 25401 charges by finding that he was "criminal[ly] negligent in failing to investigate and discovery the falsity and materiality of the [untrue] statement or acted with criminal negligence in failing to investigate and discovery the materiality of the omission," a theory of culpability which does not exist under California state law. Specifically, the lower court ignored basic principles of statutory construction and thus interpreted § 25401 in a way that the California State Legislature never intended and violated defendant's federal constitutional rights to a jury trial and due process caused by permitting jurors to convict on a theory of culpability that did not exist under state law.

ECF No. 27, pg. 29.

Regarding conspiracy liability, the Court of Appeal first outlined the jury instructions given by the trial court:

> . . .As instructed by the trial court, the People must prove: "1. The defendant *willfully* offered for sale or sold a security in California; [¶] [¶] AND [¶] 4. At the time the communication was made, *Mr. Koenig either: a. Knew that the communication included an untrue statement of material fact or knew the materiality of the omitted fact, OR b. Acted with criminal negligence in failing to investigate and discover the falsity and materiality of the statement or acted with criminal negligence in failing to investigate and discover the materiality of the omission*." (Italics added.) The court also defined "Willfully" as meaning to do something "willingly or on purpose"; and "Criminal negligence" as meaning a negligent act "which is aggravated, reckless or flagrant and which is a gross departure from what would be the conduct of an ordinary prudent, careful person under the same circumstances."

---

[2]    Petitioner's claim was somewhat different when presented to the California Court of Appeal, which described the claim as follows:

> Defendant first contends the trial court erred in instructing the jury that it could convict him of section 25401 on either a conspiracy or aiding and abetting theory.  He reasons that section 25401 is a crime of negligence and is therefore incompatible with those theories of liability.

ECF No. 30-52, pg. 23.

In the current action, Petitioner contends that § 25401 is <u>not</u> a crime based on criminal negligence and that the trial court instructed the jury in such a way that the jury was permitted to convict on that theory.

As for conspiracy, in pertinent part, the court instructed that to prove a conspiracy to violate section 25401, the People must prove: "1. The defendant intended to agree and did agree with Gary Armitage to commit the crime of sale of securities by means of false statement of a material fact or material omission in violation of Corporations Code section 25401/25540; [footnote omitted]. [¶] 2. At the time of the agreement, the defendant and one or more of the other alleged members of the conspiracy intended that one or more of them would commit the crime of sale of securities by means of false statement of a material fact or material omission in violation of Corporations Code section 25401/25540."

ECF No. 30-52, pgs. 23-24.

The Court of Appeal then provided the following analysis:

Whether a jury instruction correctly states the law is reviewed de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

A conspiracy is an agreement by two or more persons to commit any crime, and its proof requires four elements: " '(1) an agreement between two or more people, (2) who have the specific intent to agree . . . to commit an offense, (3) *the specific intent to commit that offense*, and (4) an overt act committed by one or more of the parties to the agreement for the purpose of carrying out the object of the conspiracy. [Citations.]' " (*People v. Martin* (2018) 26 Cal.App.5th 825, 831, italics added; (§ 182, subd. (a)(1)).)

Citing LaFave, defendant points out that one cannot conspire to commit a crime of negligence. (2 LaFave, *Substantive Criminal Law* (2d ed. 2003) Intent to Achieve Objective, § 12.2(c)(2) at p. 278 ["there is no such thing as a conspiracy to commit a crime which is defined in terms of recklessly or negligently *causing a result*."], italics added.) [footnote omitted]. We do not disagree with this proposition. A person cannot agree and specifically intend to accomplish an unintended result. But section 25401 does not proscribe a negligent act, nor does it proscribe a resulting harm. As such it is not incompatible with conspiracy liability.

The actus reus of section 25401 involves a willful act, not a negligent act. Section 25401 provides: "It is unlawful for any person to offer or sell a security in this state, or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." Section 25540, which provides the criminal penalties for section 25401, includes a requirement that the conduct be *willful*. (*People v. Simon* (1995) 9 Cal.4th 493, 522 (*Simon*).) Accordingly, section 25401's actus reus — offering or selling a security by means of a communication that includes an untrue material fact or omits a material fact — must be done willfully. [footnote omitted].

Consistent with this, our high court has characterized section 25401 as a general intent crime. [footnote omitted]. (*People v. Salas* (2006) 37 Cal.4th 967, 976 (*Salas*), citing *Simon*, *supra*, 9 Cal.4th at p 507 ["section 25401 is a general intent crime, not one of strict liability"].) Still, "[a] general intent crime ordinarily requires scienter, i.e., guilty knowledge of the facts which make the act a crime." (*People v. Laster* (1997) 52 Cal.App.4th 1450, 1468.) For section 25401, our high court has

defined the scienter element as "either (1) knowledge of the false or misleading nature of a representation or of the materiality of an omission, or (2) criminal negligence in failing to acquire such knowledge." (*Simon,* at p. 497.)

Critically, criminal negligence in this context refers to an alternative way of proving the knowledge element. It does not describe how the actus reus must be committed — and thus it does not convert section 25401 into a crime of criminal negligence.

We know of no California cases highlighting the distinction between a crime proscribing a negligent act and a crime with a scienter element requiring either criminal negligence in failing to discover a material fact or actual knowledge. But *United States v. Sdoulam* (8th Cir. 2005) 398 F.3d 981, provides an example under federal law. There, the defendant was charged with "conspiracy to distribute pseudoephedrine, *then having reasonable cause to believe* that such chemical would be used to manufacture methamphetamine." (*Id*. at p. 987, italics added.) The defendant argued the phrase " 'reasonable cause to believe' " created a negligence standard. (*Ibid*.) While agreeing that one cannot conspire to commit a negligent or unintentional act, the circuit court concluded that conspiracy was appropriately charged because the distribution statute prohibited the commission of an intentional act: " '[a]ny person who *knowingly or intentionally . . . possesses or distributes* a listed chemical *knowing, or having reasonable cause to believe*, that the listed chemical will be used to manufacture a controlled substance.' " (*Ibid*.) The *Sdoulam* court thus concluded the defendant's argument that the "reasonable cause to believe" language converts the conspiracy to a conspiracy to commit a negligent act was "disingenuous." (*Ibid*.) The People cited and relied upon *Sdoulam* in their briefing on appeal, but defendant did not address it in his reply although he continued to maintain that section 25401 is a crime of negligence.

Instead, defendant principally relies on cases discussing implied malice murder. (*People v. Cortez* (1998) 18 Cal.4th 1223 (*Cortez*); *People v. Swain* (1996) 12 Cal.4th 593 (*Swain*).) He argues "a person cannot conspire (or intend) to commit a killing which lacks an intent to kill, since the very act of conspiring to kill would constitute an intent to kill." But this was not the reasoning underlying our high court's rejection of the crime of conspiracy to commit an implied malice murder. The court's focus was on the inchoate nature of conspiracy, which does not require the completed commission of the target crime, and the nature of implied malice murder which punishes a resulting death that was not intended. Our high court explained when a "killing is the *direct result*" of an intentional act, the natural and probable consequences of which are dangerous to human life, malice aforethought is implied. (*Cortez,* at p. 1229, citing *Swain,* at pp. 602-603.) " 'Hence, under an *implied malice* theory of second degree murder, the requisite mental state for murder—malice aforethought—is by definition "implied," as a matter of law, from the specific intent to do some act dangerous to human life *together with the circumstance that a killing has resulted from the doing of such act*.' 'It is precisely due to this nature of *implied malice* murder that it would be *illogical* to conclude one can be found guilty of conspiring to commit murder where the requisite element of malice is implied. Such a construction would be at odds with the very nature of the crime of conspiracy—an "inchoate" crime that "fixes the point of legal intervention at [the time of] agreement to commit a crime" . . . [citation]—precisely because *commission of the crime could never be established, or deemed*

11

*complete, unless and until a killing actually occurred*.' " (*Cortez*, at pp. 1229-1230, quoting *Swain*, at pp. 602-603, first italics in original, second italics added.) [footnote omitted].

Accordingly, conspiracy is incompatible with an *unintended result crime*, such as implied malice murder. But no such limitation applies to conspiracy to commit a *prohibited act* crime, such as section 25401. [footnote omitted].

Indeed, one of the sister state cases defendant relies upon discusses conspiracy relative to target crimes that proscribe conduct and crimes that proscribe a result. In *Donohue, supra*, 150 N.H. 180, the court, quoting commentary from the Model Penal Code concerning conspiracy, wrote: "[I]n relation to those elements of substantive crimes that consist of *proscribed conduct or undesirable results* of conduct, the Code requires purposeful behavior for guilt of conspiracy, regardless of the state of mind required by the definition of the substantive crime. *If the crime is defined in terms of prohibited conduct, such as the sale of narcotics*, the actor's purpose must be to promote or facilitate the engaging in of such conduct by himself or another. If it is defined in terms of a result of conduct, such as homicide, his purpose must be to promote or facilitate the production of that result." (*Id*. at p. 183, italics added.) As the *Donohue* court observed, this portion of the Model Penal Code commentary "recognizes that one cannot conspire to commit a crime where mere recklessness or negligence *with respect to a result element suffices for the actor's culpability*." (*Id*. at p. 184.)

But section 25401 prohibits conduct. It does not require a resulting harm such as a death, injury or even monetary loss. Similar to the sale of narcotics, the prohibited act here involves the willful act of offering or selling something — a security. The sale must be by means of a communication that includes an untrue statement of material fact or omits a material fact, and as we have explained, the negligence theory in this context is merely one way to establish scienter. Accordingly, section 25401 requires neither a negligent act nor a resulting harm, the very elements that make crimes of negligence incompatible with conspiracy. We therefore conclude defendant was properly charged with conspiracy to violate section 25401.

ECF No. 30-52, pgs. 24-29.

As explained above, federal habeas relief is generally not warranted on claims asserting errors with jury instructions. Petitioner has the burden of demonstrating that the trial court's instruction violated his due process rights by infecting the entire trial such that the resulting conviction is unfair. Petitioner cannot do so in this case. In addressing this claim, the California Court of Appeal concluded that, contrary to petitioner's argument that the trial court's instruction allowed the jury to convict based on negligent conduct – a theory not contemplated under state law for violation of California Corporations Code § 25401 – the trial court's instruction described how the knowledge element could be proved, not how the crime was committed. The state court concluded that the jury instruction accurately described this

1    distinction and did not impermissibly allow the jury to convict on a theory of negligence not

2    contemplated under state law.  The state court specifically noted that the jury instruction given

3    correctly reflected the willfulness requirement of the intent element needed to establish a

4    violation of § 25401.  Given that the jury instruction accurately reflected the elements of § 25401,

5    this Court cannot say that the instruction so infected the trial as to render the verdict unfair in

6    violation of Petitioner's due process rights.  The Court thus concludes that the state court's

7    rejection of this claim was neither contrary to nor based on an unreasonable application of clearly

8    established law.

9                    2.    <u>Aiding and Abetting</u>

10                       As with Ground I, in Ground II Petitioner argues that the trial court's jury

11    instructions improperly allowed the jury to convict based on a theory of criminal negligence.[3]  In

12    Attachment C to the amended petition, Petitioner adds:

13               In this case the trial court departed from the established law and
        instructed jurors they could convict of the § 25401 charges as an aider and
14      abettor or conspirator *even if defendant had not actually known about or
        intended any of the false statements or omissions, but simply if they found
15      criminal negligence in the failure to discover a false statement or material
        omissions.*  (22CT 6448 [emphasis added]).  The trial court committed
16      prejudicial error in allowing petitioner to be convicted of conspiracy to
        commit a crime, or aiding and abetting a crime without any proof of a
17      specific intent to commit that crime. . . .

18      ECF No. 27, pg. 32.

19                       As to the trial court's aider-and-abettor instructions, the Court of Appeal first

20    outlined the instructions given by the trial court:

21               The trial court instructed the jury that it could find defendant
        guilty of section 25401 under an aider and abettor theory: "To prove that
22      the defendant is guilty of a crime based on aiding and abetting that crime,
        the People must prove that: 1. The perpetrator committed the crime; [¶] 2.
23      The defendant knew that the perpetrator intended to commit the crime;
        [¶] 3. Before or during the commission of the crime, the defendant
24      intended to aid and abet the perpetrator in committing the crime; AND [¶]
        4. The defendant's words or conduct did in fact aid and abet the
25      perpetrator's commission of the crime. [¶] Someone aids and abets a
        crime if he or she knows of the perpetrator's unlawful purpose and he or
26      she specifically intends to, and does in fact, aid, facilitate, promote,

27    _____
        [3]      Petitioner's claim was somewhat different in the state court, which characterized
28    Petitioner's claim as improperly allowing an aider-and-abettor theory for a crime which Petitioner
        argued <u>is</u> a crime of criminal negligence.

1    encourage, or instigate the perpetrator's commission of that crime."

2    ECF No. 30-52, pgs. 29-30.

3    The appellate court then offered the following analysis:

4         Defendant argues "aiding and abetting liability requires the
     defendant to 'share the specific intent of the principal,' " and one cannot
5    specifically intend to commit an unintentional crime. Again, defendant's
     arguments are based on the premise that section 25401 is something it is
6    not. Section 25401 is neither a specific intent crime nor a crime of
     negligence — it is a general intent crime, requiring that a defendant act
7    willfully. (See *Salas*, *supra*, 37 Cal.4th at p. 976; *Simon*, *supra*, 9 Cal.4th
     at p 507.) And since there is no specific intent required of the direct
8    perpetrator, there is no specific intent an aider and abettor must share.
          "Under California law, a person who aids and abets the
9    commission of a crime is a 'principal' in the crime, and thus shares the
     guilt of the actual perpetrator." (*People v. Prettyman* (1996) 14 Cal.4th
10   248, 259.) Generally, to be convicted under an aiding and abetting theory,
     a defendant must "act with knowledge of the criminal purpose of the
11   perpetrator and with an intent or purpose either of committing, or of
     encouraging or facilitating commission of, the offense." (*People v.*
12   *Beeman* (1984) 35 Cal.3d 547, 560.) If the offense charged is a specific
     intent crime, the aider and abettor must share the direct perpetrator's
13   specific intent. (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117 (*McCoy*);
     *People v. White* (2014) 230 Cal.App.4th 305, 317 (*White*).)
14        But "if the charged offense is a general intent crime, the aider and
     abettor need only knowingly and intentionally facilitate the direct
15   perpetrator's commission of the crime, without intending some additional
     result or consequence not required for the crime" and "the fact that an
16   aider and abettor must harbor a specific intent to aid the direct perpetrator
     of general intent crime 'does not transform the underlying offense into a
17   specific intent crime.' " (*White*, *supra*, 230 Cal.App.4th at p. 317, quoting
     *People v. Keovilayphone* (2005) 132 Cal.App.4th 491, 497; see also
18   *People v. Torres* (1990) 224 Cal.App.3d 763, 770 [rejecting the contention
     that aiding and abetting the sale of heroin requires a specific intent; the
19   sale of heroin is a general intent crime].) [footnote omitted].
          Accordingly, here, the jurors were properly instructed that the
20   prosecution must prove defendant intended to aid and abet the perpetrator
     in committing the crime, and he had to know of the perpetrator's unlawful
21   purpose and specifically intend to aid, facilitate, promote, encourage, or
     instigate the perpetrator's commission of the crime. And because section
22   25401 is a general intent crime requiring willful commission of the act of
     offering or selling certain securities, we reject defendant's contention that
23   the jury was instructed on aiding and abetting an unintended crime.
     [footnote omitted].

24
25   ECF No. 30-52, pgs. 30-31.

26   / / /

27   / / /

28   / / /

Again, to warrant federal habeas relief, Petitioner must show that the trial court's aider-and-abettor instruction so infected the entire trial as to render the verdict unfair. Again, the Court finds that Petitioner cannot do so here. As the state appellate court observed: "[D]efendant's arguments are based on the premise that section 25401 is something it is not." ECF No. 30-52, pg. 30. Contrary to Petitioner's assertion that § 25401 is a specific intent crime, the California Court of Appeal made it abundantly clear that § 25401 is a general intent crime, that aiding and abetting requires specific intent, but that the specific intent requirement for aiding and abetting does not convert the underlying crime into a specific intent crime. Nothing in the trial court's jury instruction allowed the jury to convict Petitioner of aiding and abetting on a theory not contemplated by the statute. This Court thus concludes that Petitioner cannot show that the instruction rendered the verdict fundamentally unfair in violation of due process. The Court finds that the state court's rejection of this claim was neither contrary to nor based on an unreasonable application of clearly established law.

3.    Burglary

In Ground III, Petitioner argues that the trial court's jury instructions improperly permitted the jury to convict him of burglary based on a finding of criminal negligence. Petitioner further explains as follows in Attachment C to the amended petition:

> The trial court departed from the established law and was prejudicial when it permitted petitioner to convicted of burglary based on finding of criminal negligence. . . . Specifically, to obtain a conviction for burglary the state must prove not only that defendant entered a protected premise, but that at the time defendant entered he specifically intended to commit a felony. Logically speaking, a defendant cannot enter a house with the specific intent to commit a crime of negligence, nor can a defendant aid and abet someone in entering a house to commit a crime of negligence. . . .

ECF No. 27, pg. 35.

As to this claim, the Court of Appeal held as follows:

> Defendant contends his burglary convictions cannot be based on intent to commit a section 25401 violation. He reasons that because burglary requires entry with specific intent to commit a felony, and a section 25401 violation is a crime of negligence, one cannot enter with intent to commit an unintentional crime. He is mistaken.

/ / /

15

1
2
3

> As discussed in part I of the Discussion, *ante*, [regarding conspiracy jury instructions] securities fraud is a general intent crime, not a crime of criminal negligence. The specific intent in burglary and the knowledge element in securities fraud do not conflict, and defendant was properly convicted of burglary.

4      ECF No. 30-52, pgs. 57-58.

5      Like Ground I and Ground II, Petitioner's argument in Ground III is premised on

6   his mistaken belief that the trial court erroneously instructed the jury that § 25401 defines a

7   specific intent crime. The state appellate court made clear that it is not; § 25401 requires only

8   general intent and allows the knowledge element to be proved by evidence of criminal

9   negligence. Because Petitioner's argument relies on a misinterpretation of California law, this

10  Court cannot conclude that the trial court's instruction resulted in an unfair verdict or that the

11  state appellate court's rejection of this claim was either contrary to or based on an unreasonable

12  application of clearly established federal law.

13              4.      Scheme to Defraud

14      In Ground IV, Petitioner contends that the California Court of Appeal erred in

15  considering any error with respect to the trial court's refusal to instruct the jury on the definition

16  of "indirect" harmless because the state did not raise that argument on appeal. The gravamen of

17  Petitioner's claim before this Court is that the Court of Appeal was not permitted to sua sponte

18  consider harmless error. See ECF No. 27, pg. 38. According to Petitioner, doing so violated the

19  concepts of separation of powers and party presentation because the court did something on its

20  own that neither of the parties asked it to do

21      In addressing the trial court's refusal to instruct the jury on the definition of

22  "indirect," the Court of Appeal agreed with Petitioner that the trial court erred, but concluded any

23  error was harmless. See ECF No. 30-52, pgs. 58-60. Specifically, as to harmless error, the Court

24  of Appeal stated as follows:

25
26
27

> On appeal, defendant argues the trial court was obligated to instruct sua sponte on the definition of "indirect." He maintains reversal is required because, although one can be vicariously liable for a section 25541 violation, the "open ended instruction" failed to convey the requisite elements of accomplice liability.

28  ///

The People maintain that no such obligation existed because "indirect" is commonly understood by those familiar with the English language and is not used in a technical legal sense. On this point, we agree with defendant.

While a trial court has "[N]o duty to clarify, amplify, or otherwise instruct on commonly understood words or terms used in statutes or jury instructions," it must define technical terms that have meanings peculiar to the law. (*People v. Griffin* (2004) 33 Cal.4th 1015, 1022.) Words or phrases have a technical, legal meaning requiring clarification if they have a definition that differs from their nonlegal meaning. (*Ibid*.)

This is the case here. In a nonlegal sense, a task can be accomplished indirectly in a myriad of ways. But in the legal context, how one may commit a crime indirectly is more circumscribed. Indirect theories such as aiding and abetting, and conspiracy require proof of certain elements. Without defining "indirect," the jury was free to chart its own path in determining whether section 25541 was committed "indirectly." Accordingly, it was incumbent upon the trial court to define "indirect" and the failure to do so was error. (*People v. Breverman* (1998) 19 Cal.4th 142, 154 [the trial court must instruct on the general principles of law relevant to the issues raised by the evidence].) The trial court should have instructed that "indirect" — as it relates to employing a device, scheme, or artifice to defraud and/or engaging in any act, practice, or course of business which operates or would operate as a fraud or deceit — means to do so by aiding and abetting or as a coconspirator.

The error was nevertheless harmless given the nature of the other counts to which guilty verdicts were returned. If defendant, as charged in count 2, "employed a device, scheme, or artifice to defraud," or if he engaged in an "act, practice, or course of business" that operated as a fraud, it was through the offer and sale of AREI securities to investor victims. Thus, the essence of count 2 was the same as that underlying the 25401 counts. Indeed, punishment on count 2, along with count 1, was stayed under Penal Code section 654, with the trial court finding "they were the means by which each of the 25401 sales of securities in fraudulent manner and the two burglaries were committed or they were the purpose of the burglary."

And again, as to the section 25401 counts (counts 3, 11, 12, 13, 17, 18, 20, 21, 22, 25, 26, 29, 31, 36, 37, and 41) the jury was instructed on conspiracy, including natural and probable consequences, and aiding and abetting. And because the jury was properly instructed on the section 25401 counts and returned guilty verdicts on all but one of them, we find beyond a reasonable doubt that had the jury been instructed on the meaning of *indirect* as to count 2, it would not have altered the jury's verdict.

ECF No. 30-52, pgs. 59-60.

Respondent argues that Petitioner's claim in Ground IV was not presented to the state supreme court and, thus, is not exhausted. See ECF No. 31, pg. 22. The Court does not agree.

/ / /

/ / /

17

1    Under 28 U.S.C. § 2254(b), the exhaustion of available state remedies is required.

2 See Rose v. Lundy, 455 U.S. 509 (1982); see also Kelly v. Small, 315 F.3d 1063, 1066 (9th Cir.

3 2003); Hunt v. Pliler, 336 F.3d 839 (9th Cir. 2003).[4]  The exhaustion doctrine is based on a policy

4 of federal and state comity, designed to give state courts the initial opportunity to correct alleged

5 constitutional deprivations.  See Picard v. Connor, 404 U.S. 270, 275 (1971); see also Rose, 455

6 U.S. at 518.  "A petitioner may satisfy the exhaustion requirement in two ways: (1) by providing

7 the highest state court with an opportunity to rule on the merits of the claim . . .; or (2) by

8 showing that at the time the petitioner filed the habeas petition in federal court no state remedies

9 are available to the petitioner and the petitioner has not deliberately by-passed the state

10 remedies."  Batchelor v. Cupp, 693 F.2d 859, 862 (9th Cir. 1982) (citations omitted).  Exhaustion

11 is not a jurisdictional requirement, and the court may raise the issue sua sponte.  See Simmons v.

12 Blodgett, 110 F.3d 39, 41 (9th Cir. 1997).  Regardless of whether the claim was raised on direct

13 appeal or in a post-conviction proceeding, the exhaustion doctrine requires that each claim be

14 fairly presented to the state's highest court.  See Castille v. Peoples, 489 U.S. 346 (1989).

15    In this case, Petitioner's opening brief to the California Court of Appeal reflects

16 that he argued that the trial court erred in refusing to instruct the jury on the definition of

17 "indirect."  See ECF No. 30-49.  The Court of Appeal addressed this argument on the merits and

18 rejected it on direct appeal, finding that, while the trial court erred, the error was harmless.  See

19 ECF No. 30-52.  In his petition for review to the California Supreme Court, Petitioner very

20 clearly argued that the California Court of Appeal violated Petitioner's constitutional rights by

21 finding the trial court error harmless even though harmless error had not been asserted by the

22 parties.  See ECF No. 30-53.  Thus, the claim presented in this federal habeas case was presented

23 to the California Supreme Court and is exhausted.

24 / / /

25 / / /

26 / / /

27

28    [4]    Claims may be denied on the merits notwithstanding lack of exhaustion.  See 28 U.S.C. § 2254(b)(2).

1        Though the Court does not agree with Respondent that Petitioner's Ground VI is

2   unexhausted, the claim is meritless.  A review of Respondent's brief on direct appeal reflects that,

3   as to Petitioner's claim relating to an instruction on the definition of "indirect," Respondent

4   argued harmless error.  See ECF No. 30-50, pg. 128.  Specifically, Respondent argued: "But even

5   it [the trial court erred], in light of the beyond overwhelming evidence of appellant's guilt

6   addressed in Argument I, it is not reasonably probably a result more favorable to him would have

7   occurred absent the error. [citations omitted]."  Id.  In his reply brief on direct appeal, Petitioner

8   acknowledges and responds to Respondent's harmless error argument.  See ECF No .30-51, pg.

9   56.  Petitioner is simply incorrect in asserting that the California Court of Appeal addressed the

10  issue of harmless error sua sponte.  To the contrary, the record reflects that both parties raised the

11  issue.  Thus, the Court of Appeal's decision did not violate concepts of separation of powers and

12  party presentation and this Court cannot conclude that the state court's rejection of this claim was

13  either contrary to or the result of an unreasonable application of clearly established law.

14              5.    Mistake-of-Law

15        Petitioner contends that the trial court erred in refusing to give the jury a mistake-

16  of-law instruction and that the California Court of Appeal erred by applying the incorrect

17  harmless error standard.  See ECF No. 27, pg. 41.  Regarding the trial court's refusal to instruct

18  the jury regarding a mistake-of-law defense, the Court of Appeal found any errors harmless.  The

19  state court began by reciting the following additional background:

20              The defense requested the following instruction on mistake of law:
            "The defendant is not guilty of a violation of Corporations Code section
21          25401/25540 if he did not have the specific intent or mental state required
            to commit the crime because he held in good faith a mistaken belief about
22          the law. [¶] If the defendant's conduct would have been lawful under the
            law as he in good faith believed the law to be, he did not commit a
23          violation of Corporations Code section 25401/25540. [¶] If you find that
            the defendant in good faith relied on the advice of his counsel he did not
24          have the specific intent or mental state required for a violation of
            Corporations Code section 25401/25540. [¶] If you have a reasonable
25          doubt about whether the defendant had the specific intent or mental state
            required for a violation of Corporations Code section 25401/25540 you
26          must find him not guilty of that crime."
            At the instruction conference, the trial court denied the request as
27          unsupported by the law, explaining, "we have the circumstance here where
            it's still an alternative criminal negligence allegation. And if the defendant
28          mistakenly believed the law to be supporting non-disclosure . . . but the

                                      19

1    People persuade jurors that to believe that was very unreasonable and
     therefore, it amounted to criminal negligence, then it's not a defense."

2          Trial counsel responded that advice of counsel goes directly to
     criminal negligence: "Is somebody criminally negligent not discovering
3    something that they're paying thirty-five thousand dollars to an expert to
     give them advice in and their advice is, hey, it's unclear."

4          The court replied, "that's not our case . . . . It's not a case where
     the accused went to a lawyer, paid the lawyer good money, the lawyer
5    said, you have no duty to disclose this and then the accused, therefore, did
     not. [¶] This is a case where lawyers told the defendant, among other
6    things, at various times, it's unclear. Some said you should disclose it, err
     on the side of disclosing. Somebody else says you don't have to. And so,
7    whether it's criminally negligent in the face of that kind of advice — and
     it varies, according to the time. It is for the jury to decide, not me." "I
8    cannot tell [the jury] . . . if the defendant misbelieved the law, even if he
     was wrong but he had a basis for misbelieving it, he's home free. I just
9    don't think that's the law."

10         The court went on to state: If "a jury in a given case concludes . . .
     the defendant not only actually believed, but in good faith believed that
11   the law said he could do or not do what he's accused of doing or not
     doing, then there's ample instructions in the criminal negligence
12   instructions for jurors to see that it's not criminally negligent. You can
     argue it's not even negligent under the ordinary negligence standard, but
13   it's not criminally negligent to rely in good faith on such advice. [¶] So, I
     think that's the safeguard for the defendant. But for me to instruct *the way
14   you have this mistake of law is really taking that issue away from them* if
     they accepted that that's really what the defendant believed." (Italics
     added.)

15         Later, the court stated: "There may be some facts that you have in
     mind . . . that could be suggestive of what [defendant] believed with
16   regards to legal opinion. And I'm certainly going to let you argue that.
     Whether I give this instruction is another issue."

17         Trial counsel sought to confirm, "what I'm hearing is, this is an
     argument to show reasonable doubt as to the elements, but it's not an
18   affirmative defense within itself. Is that . . . what the Court's saying?" [¶]
     "Right," the court responded. "And as to the criminal negligence count,
19   25401, because there is the potential that jurors will believe that . . . to
     have such a belief was in itself criminally negligent. And, in fact, not in
20   good faith. That the belief was so contrary to . . . legal advice . . . that it
     could not have been held in good faith." Counsel replied, "As long as we
21   can argue it, reasonable doubt, the elements, I understand what the Court's
     saying." The court assured him: "[Y]ou can — both sides can argue about
22   what legal advice. That's clearly been involved in the case."

23   ECF No .30-52, pgs. 36-38.

24         The state court then outlined the applicable state law regarding the mistake-of-law

25   defense and the evidence supporting a mistake-of-law instruction.  <u>See id.</u> at 38-45.  The Court

26   of Appeal concluded that the facts warranted a mistake-of-law defense instruction as to

27   Petitioner's prior convictions, but not as to any other omission made by Petitioner.  <u>See id.</u> at 45.

28   / / /

The court stated:

> Still, a defendant is entitled to a mistake of law instruction only "if the evidence supports a reasonable inference that any such claimed belief was held in good faith." (*Vineberg, supra*, 125 Cal.App.3d at p. 137.) The instruction is properly refused if circumstances " 'indicate that although defendant may have "believed" he acted lawfully, he was aware of contrary facts which rendered such a belief wholly unreasonable, and hence in bad faith.' " (*Ibid.*) Nevertheless, all that is required to warrant the instruction is "evidence from which it can be inferred that defendant['s] alleged belief in the lawfulness of [his] conduct was in good faith . . . ." (*Id.* at p. 138.)
>
> To that point, defendant argues the advice from the four attorneys sufficed to obligate a mistake of law instruction. As to the failure to disclose his convictions, defendant notes the first attorney, Webster, testified to determining, "[a]fter careful analysis," that defendant's prior convictions need not be disclosed. The second attorney, Attia, advised defendant to disclose the convictions and crafted disclosure language, which was included in three subsequent offerings. The third attorney, Tate, believed disclosure of the convictions would benefit AREI and protect against civil liability, but noted arguments against disclosing existed. [footnote omitted]. And as to Dravis, the fourth attorney, defendant argues that by the time Dravis drafted disclosures for Corporate Note II in 2007, defendant had given up the reins at AREI.
>
> As to omissions of prior defaults and oversubscriptions of AREI investments, defendant argues Tate determined that disclosing the defaults and oversubscriptions in the tenant in common offers was unnecessary because the defaults had been cured through Corporate Note I and could only affect AREI. And, according to Tate, " '[AREI's obligations] were not so relevant that they warranted discussion at that point in the tenant in common syndications.' " [footnote omitted]. Defendant also asserts that the fourth attorney, "Dravis testified that he knew at the time [Corporate Note II was] syndicated that some investor payments had been missed, and the evidence showed that he nevertheless signed off on these PPMs." [footnote omitted].
>
> Finally, as to unpaid property taxes on AREI properties, defendant asserts that a former AREI CFO testified he was told by the then-president not to pay taxes on an AREI property because taxes did not need to be paid for seven years.
>
> We agree a mistake of law instruction was warranted insofar as evidence gave rise to a good faith belief that the prior convictions need not be disclosed. Several attorneys testified to advising defendant that disclosure was not required, with Webster explaining that, under the public offering "gold standard," the conviction was too remote. Tate, similarly advised, "that the law was not as clear as we would have liked" and "there were arguments that . . . weighed in favor of them not being required to disclose it." While Attia made a "strong recommendation" to disclose the convictions (and disclosure language drafted by his firm was included in subsequent offerings), Attia also said "there is no 'bright line test' for disclosure issues such as this" and "this is a gray area . . . ." Dravis, the fourth attorney, provided no testimony regarding that disclosure, but by then defendant had been told by two attorneys that disclosure was not necessary. [footnote omitted].

/ / /

21

We conclude this evidence sufficed to warrant an instruction on mistake of law as to disclosing the convictions. We cannot say the same for the other material omissions, however.

As to the defaults, there was no evidence defendant was advised that there was a legal ground for not disclosing them. Instead, there was evidence indicating the contrary. Attia, the second attorney testified: "[if] I had information that that issuer had defaulted on a prior similar transaction or an important transaction, that could have affected the financial strength of the issuer and/or demonstrated an issue or problem with that — with respect to the issuer's ability to perform on similar instruments, it would absolutely be material."

To be sure, the third attorney, Tate testified there was "an analysis made and a decision made" to not disclose the defaults, and he explained, "[a]fter the corporate note . . . had been completed none of those notes was in default. And because none of the noteholders had ever taken any action or indicated that they had any issue with the fact that their payments were delayed … [or] wasn't repaid in full on time, suggested it wasn't a problem enough — wasn't enough of an issue to warrant mention in the tenant in common syndications. And also because they were obligations of . . . AREI and not of the issuer and really were unrelated to the issuer — the tenant in common syndications." But that explanation misses a few things.

For one, that Corporate Note I — which defendant described as his "get out of jail free card" — had cured the defaults and obviated the need to disclose them, is called into question by the fact that a tenant in common offering prepared before Corporate Note I also failed to disclose the defaults. [footnote omitted]. For another, the notion that multiple recent-past defaults of similar or important transactions — even if somehow cured — would not be information " ' "a reasonable investor would consider [] important in reaching an investment decision" ' " is simply unreasonable. (See *People v. Butler* (2012) 212 Cal.App.4th 404, 421 [facts concerning defendant's history and the financial precariousness of the businesses in which defendant was offering investments was material and failure to disclose was sufficient to satisfy section 25401].)

Finally, while Tate emphasized that AREI's obligations were unrelated to the tenant in common syndications, his assertion rings hollow given that the disclosure documents for those tenant in common investments emphasized the number and value of AREI developments, with one stating: "Since 2001, AREI and its Affiliates have acquired and/or developed 19 projects in seven states, and its annual property revenues now exceed $55 million. Additionally, AREI has raised over $160 million in private offerings of debt and equity over the past three years."

A good faith mistake of law as to the oversubscriptions is similarly unsupported. Again, nowhere does the record show defendant was advised that nondisclosure of the oversubscriptions was acceptable. Indeed, while Tate purportedly had reasons for the nondisclosure of the defaults and AREI's "obligations," the evidence does not establish he ever advised defendant that nondisclosure of the oversubscriptions was permissible. Rather, defendant received advice to the contrary. When Attia learned of the oversubscriptions, he advised that they be disclosed, and drafted disclosure language. Attia's firm also recommended that investors in an open offering be offered rescission due to the past oversubscriptions. The same recommendation was made for a previous investment in 2001 prepared by Webster. Though that rescission offer went forward, Webster

recommended against it after defendant told him that the investment had filled before the oversubscription issue arose — an assurance undermined by a 2000 letter regarding the oversubscriptions, to which defendant was copied. (See fn. 12, *ante*.) From this, there is a reasonable inference that defendant was not only aware of the oversubscriptions, but he knew they were material enough to mislead one of his attorneys about them.

Finally, as to disclosing unpaid property taxes, defendant relies on testimony of an AREI CFO, claiming the AREI president told the CFO taxes need not be paid for seven years. Defendant misleads. The CFO's testimony was actually that "*defendant* and [the president] *both* advised me of what their understanding of California law was, that we had time to pay back taxes before the properties would be sold. [footnote omitted]. (Italic added) And in any event, the record is insufficient to conclude that defendant held a good faith mistake in law regarding disclosing unpaid property taxes, even if the properties were not subject to sale for the delinquencies at the time the disclosures should have been made.

In sum, the record supports an instruction on mistake of law as to defendant's prior convictions, but no other omission.

ECF No. 30-52, pgs. 38-45.

The Court of Appeal concluded that any error in failing to give the jury a mistake-of-law instruction was harmless:

The error in failing to instruct on mistake of law, however, was harmless because even if the jury concluded defendant had a good faith mistake of law as to the need to disclose his past convictions, no count rested solely on that omission.

Of the 31 [footnote omitted] counts alleging a violation of section 25401, 16 were alleged to include misstatements by Gary Armitage (counts 3, 11, 12, 13, 17, 18, 20, 21, 22, 25, 26, 29, 31, 36, 37, 41). [footnote omitted]. And it is not argued on appeal that Armitage's misstatements were susceptible to a mistake of law challenge, or challenged in any other way. Thus, the instructional error is harmless as to those counts.

Of the remaining 15 counts, two counts (counts 16, 35) involved the sale of Corporate Note II, which was first sold in June 2007, and which among other things, failed to disclose that other AREI investors were not receiving payments, and that AREI had a $45 Million debt obligation arising out of Corporate Note I. Accordingly, any instructional error would again be harmless as to those counts.

Of the remaining 13 counts, five counts (counts 4, 6, 7, 15, 28) involved either the investment Valdry Court or Oakdale Heights Fresno. Both investments had offering documents that failed to disclose that two previous AREI investments were oversubscribed. Thus, the error as to those counts are also harmless.

Of the remaining eight counts, six counts (counts 9, 10, 23, 32, 38, and 42) involved the sale investments (Mountain House Golf Course, Northridge, La Mesa, Oakdale Heights Charlotte, Oakdale Heights Greensboro, and Virginia Beach) that used disclosure documents that either failed to disclose the defaults of prior AREI investments or the unpaid property taxes.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    Finally, the remaining two counts (counts 27 and 34) involved, inter alia, investments in Corporate Note I in April and May 2007, and both failed to disclose that some investors were not then receiving returns on the note. They also failed to disclose that eight AREI properties then had negative cash flow. [footnote omitted].

    There were other investments and omissions on which the 31 section 25401 counts could also have rested. Suffice it to say, no count turned solely on the failure to disclose defendant's conviction. Accordingly, the failure to instruct the jury on mistake of law was harmless.

ECF No. 30-52, pgs. 46-48.

   The Court of Appeal also found that any error in failing to give a mistake-of-law instruction as to Counts 1 and 2 was harmless:

    Defendant raises a similar contention that the trial court erred in failing to instruct on mistake of law as to counts 1 and 2. But because his trial counsel did not request the instruction, he argues the court had a sua sponte duty to instruct on mistake of law as to those counts.

    As discussed above, we agree the trial court was obligated to instruct sua sponte. But as counts 1 and 2 arise from the same acts of selling securities through material misstatements or omissions, for the same reasons discussed above, the error was harmless as to counts 1 and 2.

ECF No. 30-52, pg. 49.

   In his amended petition, Petitioner asserts that the California Court of Appeal erred by not applying the Chapman harmless error test. See ECF No. 27, pg. 41. The Court does not agree with the premise of Petitioner's argument – that the state appellate court applied the wrong test. Under Chapman, which is applicable in cases on direct review as Petitioner's case was when it was before the California Court of Appeal, non-structural constitutional errors can be considered harmless when the court can declare a belief that the error was harmless beyond a reasonable doubt. See 386 U.S. at 24. Here, the California Court of Appeal made such a declaration in determining that the error was harmless given the overwhelming evidence accepted by the jury establishing Petitioner's guilt beyond a reasonable doubt.

/ / /

/ / /

/ / /

/ / /

24

6.    <u>Unanimity</u>

Ground VI challenges the trial court's failure to provide a unanimity instruction as to the overt act committed in furtherance of a conspiracy.  As to this claim, the Court of Appeal stated:

> As to count 1, defendant challenges the trial court's failure to instruct the jury that it must unanimously agree on an overt act committed in furtherance of the conspiracy. He asserts that because the prosecutor alleged 20 separate overt acts in support of the conspiracy, the trial court should have sua sponte instructed the jury that it must unanimously agree as to which overt acts were committed. Defendant acknowledges that our high court rejected this argument in *People v. Russo* (2001) 25 Cal.4th 1124 (*Russo*), but he contends the *Russo* court did not specifically address his argument that the failure to give a unanimity instruction violates his Sixth Amendment rights, citing *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [147 L.Ed.3d 435]; *Jones v. United States* (1999) 526 U.S. 227, 243, fn. 6 [143 L.Ed.2d 311]; and *Mullaney v. Wilbur* (1975) 421 U.S. 684, 697-698 [44 L.Ed.2d 508]. We find no error.
>
> A unanimity instruction is required if there is evidence that more than one crime occurred, each of which could provide the basis for conviction under a single count. (*People v. Diedrich* (1982) 31 Cal.3d 263, 281.) In *Russo*, a conspiracy case, our Supreme Court held that "the jury need not agree on a specific overt act as long as it unanimously finds beyond a reasonable doubt that some conspirator committed an overt act in furtherance of the conspiracy." (*Russo, supra*, 25 Cal.4th at p. 1128.) It explained: "[t]he key to deciding whether to give the unanimity instruction lies in considering its purpose. The jury must agree on a 'particular crime' [citation]; it would be unacceptable if some jurors believed the defendant guilty of one crime and other jurors believed [the defendant] guilty of another. *But unanimity as to exactly how the crime was committed is not required.* Thus, *the unanimity instruction is appropriate 'when conviction on a single count could be based on two or more discrete criminal events,' but not 'where multiple theories or acts may form the basis of a guilty verdict on one discrete criminal event.'* [Citation.] In deciding whether to give the instruction, the trial court must ask whether (1) there is a risk the jury may divide on two discrete crimes and not agree on any particular crime, or (2) the evidence merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a single discrete crime. In the first situation, but not the second, it should give the unanimity instruction." (*Id*. at pp. 1134-1135, italics added.)
>
> Defendant's attempts to distinguish *Russo* were rejected in *People v. Grimes* (2016) 1 Cal.5th 698. There, our high court applied *Russo* and specifically rejected the defendant's Sixth Amendment argument from the federal line of cases, where the prosecutor alleged five different overt acts in furtherance of the conspiracy. (*Id.* at p. 725.) It held that none of the federal cases cited by the defendant "calls into question our prior conclusion that the jurors need not agree unanimously on which overt act of a conspiracy was proved." (*Id.* at p. 726.) The court also cited a consistent holding by the United States Supreme Court, in *Schad v. Arizona* (1991) 501 U.S. 624, 629-645 [115 L.Ed.2d 555], which held that when a defendant's alleged conduct constitutes a single discrete offense that may be committed in different ways, the federal Constitution does not

25

require unanimity as to how the crime was committed. (*Grimes*, at p. 726.)
Our high court having rejected defendant's argument, so too must
we. (*Auto Equity Sales*, *supra,* 57 Cal.2d at p. 455.)

ECF No. 30-52, pgs. 61-63.

Here, as the state court observed, the crime at issue – conspiracy to commit securities fraud – is a single criminal event that requires some overt act. The overt act can be one of any number of discrete acts. As a matter of clearly established federal law announced by the United States Supreme Court, the jury is not required to unanimously agree on the underling overt act which supports a conviction for a discreet criminal event such as conspiracy to commit securities fraud. See Schad, 501 U.S. 624.

**B.    Cumulative Error Claim**

In Ground VII, Petitioner contends that he is entitled to relief due to cumulative error. The Court of Appeal addressed this claim as follows:

> Defendant finally contends the cumulative effect of the various alleged instructional errors warrants reversal. With the exceptions of contentions 4, 5, and 11 we have found no error. We conclude those errors had no effect on the other contentions raised or the trial as a whole. We therefore find no cumulative error.

ECF No. 30-52, pg. 65.

As discussed above, this Court finds no basis for federal habeas relief on Petitioner's various claims and also finds no errors to cumulate. Moreover, there is no clearly established Supreme Court precedent which holds that cumulative error is a valid basis for federal habeas relief. See Lorraine v. Coyle, 291 F.3d 416, 447 (6th Cir. 2002) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief"); Henderson v. Norris, 118 F.3d 1283, 1288 (8th Cir. 1997); Scott v. Jones, 915 F.2d 1188, 1191 (8th Cir. 1990) ("cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own"); Bush v. Carpenter, 926 F.3d 644, 686 n.16 (10th Cir. 2019) ("Although we are bound by Tenth Circuit precent on this issue, we note, in passing, that the Supreme Court has never recognized the concept of cumulative error"). Absent errors to cumulate and clearly established Supreme Court precedent establish cumulative error as a cognizable federal habeas claim, the Court must reject Petitioner's Ground VII.

### III.  CONCLUSION

Based on the foregoing, the undersigned recommends that Petitioner's amended petition for a writ of habeas corpus, ECF No. 27, be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 30, 2025

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

27